UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MYRELLA IKEDA,

                            Plaintiff,

       – against –

J. SISTERS 57, INC. *doing business as*
J. SISTERS BEAUTY SALON, JONICE
PADILHA, and ANTONIO LUIS ROSA,

                            Defendants.

J. SISTERS 57, INC., JONICE PADILHA,
and ANTONIO LUIS ROSA,

                         Third-Party Plaintiffs,

       – against –

ORGANIC SALON SYSTEMS, HERB UK
LIMITED, and INTERNATIONAL HAIR AND
BEAUTY SYSTEMS, LLC,

                       Third-Party Defendants.

**OPINION AND ORDER**

14-cv-3570 (ER)

RAMOS, D.J.:

      Myrella Ikeda ("Plaintiff" or "Ikeda") brings this personal injury action following a beauty makeover gone awry. Plaintiff underwent an allegedly botched organic "hydration" hair treatment at the J. Sisters Beauty Salon ("J. Sisters") in Manhattan which left her with thinning hair and an injured scalp. Plaintiff filed the instant action against J. Sisters, the beauty salon's co-owner, Jonice Padilha ("Padilha"), and the hair stylist who attended to her, Antonio Luis Rosa ("Rosa"). In turn, J. Sisters, Padilha and Rosa (collectively, "Third-Party Plaintiffs" or "Defendants") filed a Third-Party Complaint against Organic Salon Systems ("Organic Salon"),

HERB UK Limited ("HERB UK"), and International Hair and Beauty Systems ("International Hair") (collectively, "Third-Party Defendants)—the entities involved in the manufacture, marketing, and distribution of the product that purportedly caused Plaintiff's injuries.  Third-Party Plaintiffs allege eleven causes of action, including negligence, strict products liability, breach of implied and express warranties, and indemnification.  HERB UK moves to dismiss the Third-Party Complaint in its entirety for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.[1]  Third-Party Def.'s Mot. Dismiss, Doc. 27.  For the reasons set forth below, HERB UK's motion to dismiss is DENIED.

## I. Background[2]

### A. The Dispute

On October 29, 2011, Ikeda, an aspiring model, arrived at J. Sisters in Manhattan for a beauty appointment.  Compl., Doc. 2 at ¶¶ 3, 12, 14.  She had set the appointment up through a friend, who coordinated to feature her transformation in the Brazilian magazine, *Malu*.  *Id.* ¶¶ 8-12.  At her appointment, Ikeda was introduced to Rosa, who would be styling her hair.  *Id.* ¶ 19.

Rosa began by giving Ikeda an organic hair hydration treatment, using a product called Naturalite White Lightening Powder.[3]  *Id.* ¶ 23.  Ikeda's scalp almost immediately began to sting

---

[1] Organic Salon and International Hair were served with the Third-Party Complaint on October 15, 2014.  *See* Aff. Service, Docs. 37, 38.  Counsel for International Hair filed a notice of appearance on March 2, 2015.  *See* Doc. 35.  The same attorney filed an Answer on behalf of both International Hair and Organic Salon on March 25, 2015.  *See* Third-Party Defs.' Answer, Doc. 36.

[2] The following facts, drawn from the original Complaint, the Third-Party Complaint, and the parties' Declarations, are construed in the light most favorable to Third-Party Plaintiffs.  *Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*, No. 00 Civ. 5663 (MBM), 2001 WL 1468168, at *1 (S.D.N.Y. Nov. 19, 2001) (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986); *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 178 (S.D.N.Y. 1995)).

[3] The Complaint acknowledges that Rosa used other products on Ikeda's hair that have yet to be identified.  Compl. ¶ 23 n.1.

and burn, which Rosa indicated was "normal." *Id*. ¶ 24.  One hour later, Rosa washed the product out of Ikeda's hair and placed her under a vapor fan, where she was left for at least another hour. *Id*. ¶¶ 26, 28.  When Rosa returned, he applied an organic toner on Ikeda's hair and again placed her under a vapor fan. *Id*. ¶¶ 32-33.  Throughout this time, Ikeda's scalp was burning until she eventually could not feel it.  *Id*. ¶ 26, 28, 33.  When Rosa used a blow dryer to dry Ikeda's hair an hour later, her scalp began to itch and her hair—which had changed texture— also started falling out. *Id*. ¶ 36.  At this point, Ikeda ended the appointment.  *Id*. ¶¶ 40-45.

According to the Complaint, Ikeda went from being a "normal, smiling, happy" person "with beautiful hair" to feeling like "a monster with a terrible appearance." *Id*. ¶ 47.  She also alleges damage to her scalp, including burning, itching and numbness, along with psychological injuries.  *Id*.  As time went on, Ikeda became depressed, unmotivated and isolated, giving up professional and educational opportunities as a result of her condition. *Id*. ¶¶ 53, 58, 60.  Her hair is now "thinner, uneven and less lustrous than before." *Id*. ¶ 63.

Ikeda filed the instant action on May 19, 2014. *See* Compl.  She asserts three causes of action:  (1) negligence; (2) recklessness; and (3) negligent supervision.  *Id*. at ¶¶ 67-75.  Her claim for damages totals nearly $3 million.  *See id*. ¶¶ 69, 72, 75.  On September 25, 2014, Defendants filed a Third-Party Complaint against the Third-Party Defendants, which are identified as being responsible for manufacturing, distributing, and marketing Naturlite White Lightening Powder.  *See* Third-Party Compl. ¶¶ 33-45.  HERB UK filed its motion to dismiss on November 13, 2014.  Doc. 27.

**B.  HERB UK's New York Contacts**

Third-Party Plaintiffs allege that HERB UK manufactures Naturlite White Lightening Powder under the brand name "Organic Colour Systems."  Giannetta Decl., Doc. 31 at ¶ 7.

HERB UK is organized under the laws of the United Kingdom and maintains its principal place of business in the British town of Lymington, Hampshire. Third-Party Compl. ¶¶ 8-9. HERB UK has never been licensed to do business in New York State, nor have any of its directors, officers, or employees ever participated in the purchase, sale, distribution, resale, financing or service of any goods or services within the state. Perfitt Aff., Doc. 29 at ¶¶ 11-12. It does not maintain any offices, bank accounts, telephone listings, property or assets in New York. *Id.* ¶¶ 16-20. HERB UK does not have a designated agent for service of process in New York. *Id.* ¶ 10. It has neither sold products over the internet to customers in the United States nor entered into any contract to perform services within New York State. *Id.* ¶¶ 22, 27.

At the time the motion was filed, the HERB UK website indicated that it manufactures products under two brands: Organic Colour Systems, which is used exclusively in salons, and Tints of Nature, which targets the retail market. Giannetta Decl., Doc. 31, Ex. C. The website also boasts that it "exports to over 40 countries worldwide." *Id.* Meanwhile, the Organic Colour Systems website, as of December 18, 2014, states that its products are only available in select salons, featuring a cluster of national flags—including the American flag—presumably to symbolize where it conducts its business.[4] Giannetta Decl., Ex. B. It also indicates that the brand is not aspiring to have its products "stocked by every salon around the world—just like-minded salons that are concerned about health, both theirs and their customers, and the condition of their client' hair[.]" Giannetta Decl., Ex. E.

---

[4] The attorney for Third-Party Plaintiffs states that the Organic Colour Systems website is operated by Organic Salon "and/or" International Hair. Giannetta Decl. ¶ 8.

The Third-Party Complaint alleges that HERB UK sold Naturlite White Lightening Powder to Third-Party Defendants Organic Salon "and/or"[5] International Hair, which in turn sold the product to Third-Party Plaintiffs.[6]  Third-Party Compl. ¶¶ 44-45.  Third-Party Plaintiffs further claim that HERB UK targeted the national market through its distributor, International Hair.  Giannetta Decl., Doc. 31 at ¶ 6.  In its motion, HERB UK confirms that it sells its product *solely* to International Hair, which is based in Florida and with whom it does not have any common owners, principals, managers, employees, websites, bank accounts, telephone numbers, offices, mailing addresses, assets, or property interests.  Third-Party Def.'s Mem. L. Supp. Mot. Dismiss, Doc. 28 at 6.  International Hair sells a wide variety of products from several manufacturers.  *Id*.

## II.     Legal Standard

As a preliminary matter, the Court notes that, in addition to Federal Rule of Civil Procedure 12(b)(2), HERB UK's motion to dismiss for lack of personal jurisdiction is made pursuant to New York Civil Practice Law and Rules ("C.P.L.R.") §§ 3211(a)(1), (2), (7), and (8).[7]  *See* Doc. 28 at 2.  "The Federal Rules of Civil Procedure 'apply to a civil action after it is

---

[5] The Third-Party Complaint identifies International Hair as "d/b/a," or doing business as Organic Salon.  Third-Party Compl. ¶ 21.  Third-Party Plaintiffs refer to International Hair and Organic Salon as one entity, collectively "Organic Salon."  Doc. 30 at 1.  However, the Third-Party Complaint independently names International Hair and Organic Salon as Third-Party Defendants, as if they were separate entities.  HERB UK did not further clarify the relationship among these two corporations.  Therefore, for the purposes of this motion to dismiss, the Court assumes that they are one in the same.

[6] HERB UK erroneously claims that Third-Party Plaintiffs have not alleged that they were the purchasers of the Naturlite White Lightening Powder, or that International Hair sold them the product.  *See* Doc. 32 at 10.  On the contrary, the Third-Party Complaint unambiguously states, "the third-party defendants ORGANIC SALON SYSTEMS and/or INTERNATIONAL HAIR AND BEAUTY SYSTEMS, LLC sold the subject Naturlite White Lightening Powder to defendants/third-party plaintiffs J. SISTERS 57, INC., d/b/a J. SISTERS BEAUTY SALON, JONICE PADILHA or ANTONIO LUIS ROSA."  Third-Party Compl. ¶ 45.

[7] C.P.LR. § 3211(a) states, in relevant part:

> A party may move for judgment dismissing one or more causes of action asserted against him on the ground that:

5

removed from a state court' to a United States district court." *Hubbard v. Kelley*, 752 F. Supp. 2d 311, 315 (W.D.N.Y. 2009) (quoting Fed. R. Civ. P. 81(c)(1)). Accordingly, the Court will only assess HERB UK's motion insofar as it seeks dismissal for lack of personal jurisdiction under Rule 12(b)(2).

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant." *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir. 1999)). To meet this burden where there has been no discovery or evidentiary hearing, the plaintiff must plead facts sufficient for a *prima facie* showing of jurisdiction. *Id.* The Court construes all of Plaintiff's allegations as true and resolves all doubts in its favor. *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)). "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'" *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 185 (2d Cir. 1998)). As 12(b)(2) motions are "inherently . . . matter[s] requiring the resolution of factual issues outside of the pleadings," courts may rely on additional materials when ruling on

---

1. a defense is founded upon documentary evidence;
2. the court has not jurisdiction of the subject matter of the cause of action; or
[. . .]
7. the pleading fails to state a cause of action; or
8. the court has not jurisdiction of the person of the defendant[.]

N.Y. C.P.L.R. 3211(a)(1)(2)(7)(8).

such motions.  *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.,* No. 91 Civ. 3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992) (internal citations omitted); *Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008).

### III.     Discussion

In a diversity action, personal jurisdiction is determined in accordance with the law of the forum in which the federal court sits.  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  This determination involves a two-step analysis.  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).  In New York, the Court must first determine whether personal jurisdiction is appropriate pursuant to the State's general jurisdiction statute, C.P.L.R. § 301, or its long arm jurisdiction statute, C.P.L.R. § 302.  If and only if the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, the second step is an evaluation of whether the Court's exercise of personal jurisdiction comports with the Due Process Clause of the United States Constitution.  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163-164 (2d Cir. 2010).

A. **Long Arm Jurisdiction**

The Third-Party Complaint relies solely on C.P.L.R. § 302(a)(3) as providing the statutory basis for this Court's exercise of personal jurisdiction over HERB UK.[8]  Third-Party Compl. ¶¶ 16-17.  Under C.P.L.R. § 302(a)(3), a court may exercise personal jurisdiction over any non-domiciliary who, either in person or through an agent: "commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]"  Pursuant to Section 302(a)(3), courts apply a "situs-of-injury test, which asks them to locate the 'original event which caused the injury.'"  *Bank Brussels Lambert*, 171 F.3d at 791 (quoting *Hermann v. Sharon Hosp., Inc.*, 135 A.D.2d 682, 683, 522 N.Y.S.2d 581, 583 (1987)).

Taking Ikeda's allegations as true, HERB UK committed tortious acts outside the state that injured her in New York.  As to subsection (i), the facts alleged do not permit the conclusion that HERB UK has subjected itself to the jurisdiction of New York courts.  Third-Party Plaintiffs do not substantively allege that HERB UK regularly does business or engages in a persistent course of conduct *in* New York.  *See Ingraham v. Carroll*, 90 N.Y.2d 592, 597, 687 N.E.2d 1293 (1997) ("[C]lause (i) does not require the quantity of New York contacts that is necessary to obtain general jurisdiction under the 'doing business' test of CPLR 301 . . . [but] it does require something more than the 'one shot' single business transaction described in CPLR 302(a)(1).")

---

[8] As Third-Party Plaintiffs do not allege that Third-Party Defendant is subject to New York's general jurisdiction statute, C.P.L.R. § 301, or cite to any other portion of C.P.L.R. § 302(a) in its papers, the Court will evaluate jurisdiction under New York's long arm statute, C.P.L.R. § 302(a)(3), only.

(internal citations omitted).  Furthermore, they do not claim that HERB UK derives substantial revenue from goods used or consumed in New York.[9]

Under subsection (ii), Third-Party Plaintiffs must establish that HERB UK should have reasonably expected that its acts would have consequences in New York, while also deriving substantial revenue from interstate or international commerce.  As to the first inquiry, "[t]he nonresident tortfeasor must expect, or have reason to expect, that his or her tortious activity in another State will have direct consequences in New York."  *Id.* at 598, 1293.  In *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 242 (2d Cir. 1999), the Second Circuit determined that the court had personal jurisdiction over a Japanese manufacturer under § 302(a)(3)(ii), even though the company did not directly serve consumers in New York.  The Circuit emphasized the fact that the Japanese manufacturer had an exclusive sales agreement with a Pennsylvania corporation, which sold the allegedly defective product at issue in the case.  *Id*.  Even though the exclusive sales agreement did not specifically direct the Pennsylvania sales agent to target the New York market, it permitted the sale of the Japanese manufacturer's product throughout the world.  *Id*.  As a result, the Circuit concluded that the Japanese manufacturer "did indeed attempt to serve the New York market."  *Id*.

The holding in *Kernan* was more recently adopted by a court in this district.  In *Stone v. Ranbaxy Pharm., Inc.*, No. 10-CV-08816 (JFM), 2011 WL 2462654, at *4 (S.D.N.Y. June 16, 2011), the court determined that it had personal jurisdiction over an Indian pharmaceutical

---

[9] Although Third-Party Plaintiffs broadly claim in their opposition papers that "HERB UK derives substantial revenue from goods used in New York," the allegation is conclusory as they do not allege any facts in support.  Third-Party Pls.' Mem. L. Opp., Doc. 30 at 1-2.  Their papers only substantively address the question of whether HERB UK derives substantial revenue from interstate and international commerce, which falls under C.P.L.R. § 302(a)(3)(ii).  *Id*. at 6-12.

manufacturer headquartered in New Delhi under § 302(a)(3)(ii) by virtue of its exclusive sales agreement with a Florida-based wholly-owned subsidiary. Citing *Kernan*, the court ruled that, given the exclusive relationship between the two entities, the plaintiffs sufficiently alleged that the Indian manufacturer met the requirements for the exercise of personal jurisdiction under § 302(a)(3)(ii) as it sought to serve the New York market, albeit indirectly.[10]  *Id.*

Such is the case here. Much like the Japanese manufacturer in *Kernan*, HERB UK's principal place of business is outside of the United States and it has never been licensed to do business in New York. Perfitt Aff., Doc. 29 at ¶¶ 8, 11; *see also Kernan,* 175 F.3d at 239. As in *Kernan*, HERB UK has never provided any services nor entered into any contract in New York. *Id.* ¶ 27; *see also Kernan,* 175 F.3d at 239. However, HERB UK concedes that it sells its product in the United States *solely* through International Hair, a Florida corporation. Doc. 28 at 6; *see also* Doc. 32 at 10 ("HERB UK did not make any direct sales to any stylist or salon in the United States. They sold to one source alone."). Furthermore, HERB UK does not deny that International Hair sold Naturlite White Lightening Powder to Third-Party Plaintiffs, located in New York. In light of the parallels between the instant action and *Kernan*, Third-Party Plaintiffs have sufficiently established that HERB UK should have reasonably expected that its acts would have consequences in New York.

Given the pre-discovery posture of this case, Third-Party Plaintiffs have also alleged sufficient facts to establish that HERB UK derives substantial revenue from international, if not also interstate commerce. "No specific dollar threshold is required for the revenue to be deemed substantial, and the main concern is the overall nature of the defendant's business and the extent

---

[10] In *Stone*, not only did the Indian manufacturer exclusively sell its products to the Florida distributor; those were the only products that the distributor sold. *Stone*, 2011 WL 2462654, at *4.

to which he can fairly be expected to defend lawsuits in foreign forums." *Lawson v. Full Tilt Poker Ltd.*, 930 F. Supp. 2d 476, 485-86 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). For the purposes of defeating a motion to dismiss, it is sufficient that Third-Party Plaintiffs have pointed out that the HERB UK website indicates that it exports its products to forty countries around the world. Giannetta Decl., Ex. C. The sheer breadth of HERB UK's foreign business operations is enough to suggest that HERB UK is actively and substantially involved in international commerce, and is not merely serving the domestic British market. *See Lawson*, 930 F. Supp. 2d at 486 ("Given the global scale of [the defendant's] online operation . . . these profits were surely derived from interstate and international commerce."). Meanwhile, HERB UK's papers do not substantively rebut § 302(a)(3)(ii)'s applicability.[11] Therefore, personal jurisdiction is appropriate under New York law.

## B. Due Process

Having found that § 302(a)(3)(ii) confers jurisdiction over Defendant, the Court must examine whether its assertion of personal jurisdiction comports with due process. *Best Van Lines*, 490 F.3d at 242. Due process demands that defendants have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of

---

[11] In its papers, HERB UK conflates the elements necessary to establish personal jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii) with federal due process requirements, which are discussed below. Doc. 28 at 8-9, 16-17; *see also* Third-Party Def.'s Reply, Doc. 32 at 7-8. While the two inquiries overlap in some respects, they are not the same.

Furthermore, HERB UK confuses the requirements of N.Y. C.P.L.R. § 301 with § 302. *See* Doc. 28 at 15 (citing *Sedig v. Okemo Mountain*, 204 A.D.2d 709, 612 N.Y.S.2d 643 (1994) (explaining how jurisdiction may be acquired over a foreign company under § 301); and *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 536, 227 N.E.2d 851 (1967) (establishing jurisdiction over a foreign company under § 301 by virtue of the fact that it was it was "doing business" in New York "in the *traditional* sense") (emphasis in original)). "Section 301 incorporates New York's recognized common-law grounds for personal jurisdiction . . . including the extension of personal jurisdiction to corporations engaged in a continuous and systematic course of business in the state . . . while section 302 extends specific personal jurisdiction to non-domiciliary defendants in instances when their alleged misconduct bears a direct connection to New York." *Kejriwal v. UCO Bank*, No. 12-CV-7507 (MHD), 2014 WL 116218, at *4 (S.D.N.Y. Jan. 10, 2014) (internal citations omitted). Section 301 is not implicated in the current action.

fair play and substantial justice." *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945) (internal citations omitted).  Where a non-domiciliary "avails itself of the benefits of the forum, has sufficient minimum contacts with it, and should reasonably expect to defend its actions there," the Court's exercise of personal jurisdiction will not offend due process.  *Kreutter,* 71 N.Y.2d at 466, 527 N.Y.S.2d 195, 522 N.E.2d 40.

> i.   *General vs. Specific Jurisdiction*

There are two types of jurisdiction, general and specific.  General jurisdiction may only be asserted where the parties' contacts with the forum state are "continuous and systematic" and may apply "irrespective of whether the claim arises from or relates to the defendant's forum contacts."  *Id*. (citing *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co*., 241 F.3d 135, 152 (2d Cir. 2001)).  Alternatively, specific jurisdiction is implicated when "the claim arises out of, or relates to, the defendant's contacts with the forum" such that it can be said that it "'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there."  *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co*., 241 F.3d 135, 152 (2d Cir. 2001) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

HERB UK argues that Third-Party Plaintiffs must establish *both* specific and general jurisdiction and that they fail to do so.[12] Third-Party Def.'s Reply, Doc. 32 at 7.[13] On the contrary, Third-Party Plaintiffs need only establish one or the other. As to general jurisdiction, "the paradigm forum . . . is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (U.S. 2011) (internal citation omitted). Based on the facts before the Court, HERB UK is at "home" in the United Kingdom, where it maintains its principal place of business. *See* Third-Party Compl. ¶ 9. Although Third-Party Plaintiffs allege that *Organic Salon* maintains two "ambassadors" in New York, there is no indication that *HERB UK* has any employees or representatives present in the state. *See* Doc. 30 at 17. As it stands, this case does not constitute an instance "in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit . . . *on causes of action arising from dealings entirely distinct from those activities*." *Daimler*, 134 S. Ct. at 761 (emphasis and alteration in original) (quoting *Int'l Shoe Co.*, 326 U.S. at 318). Therefore, the Court's analysis will be limited to determining whether it can exercise specific jurisdiction over HERB UK.

---

[12] HERB UK, as a result of its apparent misunderstanding, heavily relies on multiple cases in which the Supreme Court refused to find the existence of *general* jurisdiction. *See* Doc. 28 at 10-11. For example, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 409 (1984) involved an action against a Colombian corporation following a helicopter accident that occurred in Peru. All of the parties agreed that the claims against the Colombian corporation did not arise out of its contacts with the forum state and therefore the only question at issue was whether it was subject to the court's general jurisdiction. *Id*. at 416; *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 751-752, 757-758 (2014) (addressing whether the court had general jurisdiction in an action brought by twenty-two residents of Argentina against German public stock company accused of collaborating with Argentine state security forces during the country's 1976-1983 "Dirty War"). Similarly, another case HERB UK cites, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011), involved a bus accident in France caused by a faulty tire that was manufactured and sold outside of the United States. Once again, the Court found that because the dispute arose abroad, only general jurisdiction—not specific—was at issue. *Id*. The Court explained, "[i]n contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id*. (internal citations and quotation marks omitted).

[13] HERB UK's reply papers are unnumbered. Therefore, the Court will refer to the page numbers reflected on ECF.

*ii.   Due Process Analysis*

The due process inquiry has two parts: (1) "the court must determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction," and (2) "the court must determine whether the assertion of personal jurisdiction is reasonable under the circumstances of the particular case." *Schottenstein v. Schottenstein*, No. 04 Civ. 5851 (SAS), 2004 WL 2534155, at *7 (S.D.N.Y. Nov. 8, 2004) (citing *Metro. Life*, 84 F.3d at 567). Specifically, under the "minimum contacts" evaluation, the question is whether the party "has certain minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (internal quotation marks and citation omitted) (alteration in original).

The Supreme Court recently addressed the "minimum contacts" inquiry in *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011), which involved a products-liability suit in New Jersey against a British manufacturer that had an exclusive sales arrangement with an Ohio-based distributor. *Id*. at 2786 (Kennedy, J., plurality opinion); *see also id*. at 2796 (Ginsburg, J., dissenting) (identifying the exclusive relationship between the two entities). In support of jurisdiction, the plaintiffs noted that representatives from the British manufacturer attended annual conventions in the United States and that four machines, including the one that caused the injury at issue, reached New Jersey—the forum state. *Id*. Writing for the plurality, Justice Anthony Kennedy overturned the lower court's finding of personal jurisdiction, declaring that "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *Id.* at 2788.

HERB UK argues that the plurality opinion is decisive in this case.  Doc. 28 at 13.  However, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds."  *Marks v. United States*, 430 U.S. 188, 193 (1977) (internal citation and quotation marks omitted).  Thus, Justice Stephen Breyer's concurrence in *Nicastro* controls.  The *Nicastro* concurring opinion declined to adopt the "general rule" announced by Justice Kennedy that the exercise of jurisdiction is appropriate only where the defendant can be said to have "targeted the forum."  *Nicastro*, 131 S. Ct. at 2792-93 (Breyer, J., concurring in the judgment) (finding this case to be "an unsuitable vehicle for making broad pronouncements that refashion basic jurisdictional rules," and declaring that the case can be decided on the basis of established Supreme Court precedent); *see UTC Fire & Sec. Americas Corp. v. NCS Power, Inc.*, 844 F. Supp. 2d 366, 376 (S.D.N.Y. 2012) (holding that *Nicastro* does not foreclose the court from holding that it has personal jurisdiction in New York over a Hong Kong corporation that authorized a Washington-based corporation to sell its batteries subject to individual approval).  However, although Justice Breyer did not adopt the Court's reasoning, he concurred with the outcome, finding that none of the facts showed a "regular flow" or "regular course" of sales in New Jersey or "something more."  *Id*. at 2792.  Justice Breyer further noted that "[n]one of our precedents finds that a single isolated sale, even if accompanied by the kind of sales effort indicated here, is sufficient."  *Id*.

Here, Third-Party Plaintiffs have similarly failed to assert factual allegations that show that HERB UK has sufficient minimum contacts with New York to warrant the exercise of personal jurisdiction.  They have not alleged that any additional products manufactured by

15

HERB UK reached the New York market, let alone ventured to estimate the volume of HERB UK goods that make their way into the state. Nor have they alleged any other facts that demonstrate HERB UK's specific effort to sell in New York, such as "special state-related design, advertising, advice, marketing, or anything else."[14] *Id*. Therefore, even construing the facts in the light most favorable to Third-Party Plaintiffs, the Court is unable to find that they have made a *prima facie* showing of specific jurisdiction under the due process clause of the Constitution. Given that Third-Party Plaintiffs have not sufficiently alleged that HERB UK has "minimum contacts" with New York, the Court will not reach the second question of whether the assertion of personal jurisdiction is reasonable.[15]

### C. Limited Jurisdictional Discovery

Third-Party Plaintiffs ask the Court to allow them to conduct jurisdictional discovery if the Court determines that they have not established personal jurisdiction. "It is well settled under Second Circuit law that, even where plaintiff has not made a *prima facie* showing of personal

---

[14] As previously noted, with respect to the two Organic Salon "ambassadors" Third-Party Plaintiffs identify as located in New York, there is no indication that these individuals are engaging in any business activities on behalf of HERB UK. *See supra* Part III.B.i.

[15] If the Court were to undertake this inquiry, Third-Party Plaintiffs have the better of the argument. Part two of the due process test—the reasonableness of a Court's assertion of personal jurisdiction—depends on a consideration of "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the most efficient resolution of the controversy; and (5) the interests of the state in furthering substantive social policies." *Schottenstein*, 2004 WL 2534155, at *8 (citing *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 112 (1987), and *Burger King Corp.*, 471 U.S. at 476-77). As the *Kernan* court acknowledged, although litigating a suit in New York imposes a substantial burden on a foreign-based defendant, "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Kernan*, 175 F.3d at 244 (internal quotation marks and citation omitted). New York has a strong interest in the dispute, given that Third-Party Plaintiffs are citizens of New York. Meanwhile, Third-Party Plaintiffs also have a strong interest in litigating this action in the same forum that is handling the underlying case, as supposed to bringing a second action in another state or country. This is also the most efficient manner of administrating justice, particularly given that most of the evidence and several potential witnesses will likely be found in New York, where the injury allegedly took place. Finally, HERB UK has not cited any policy reasons for preventing the case from going forward in this forum.

jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014) (citing *In re Magnetic Audiotape Antitrust Litig*., 334 F.3d 204, 208 (2d Cir. 2003)) ("At the very least, then, plaintiffs are entitled to further development on this point prior to a conclusion that they have failed to make a *prima facie* showing that SKM participated directly in a conspiracy[.]").  Jurisdictional discovery is appropriate when the party has made a "colorable basis for personal jurisdiction, which could be established with further development of the factual record." *Id*. (internal citation omitted).  As one court explained:

> District courts have considerable discretion in determining how best to handle jurisdictional questions . . . and generally may permit a plaintiff to conduct limited discovery with respect to the jurisdictional issue. [. . .] Such discovery has typically been authorized where the plaintiff has made a threshold showing that there is some basis for the assertion of jurisdiction, facts that would support a colorable claim of jurisdiction.

*Ayyash v. Bank Al-Madina*, No. 04 CIV. 9201 (GEL), 2006 WL 587342, at *5 (S.D.N.Y. Mar. 9, 2006) (internal quotation marks and citations omitted).

     Although Third-Party Plaintiffs have not made a *prima facie* showing of personal jurisdiction, their assertion is at least colorable given the exclusive sales relationship between HERB UK and International Hair.  To be sure, their ability to ultimately prevail on this issue hinges on their ability to show sufficient purposeful contacts with New York, and not on the mere foreseeability that HERB UK's product would wind up in New York.[16]  *See Nicastro*, 131

---

[16] HERB UK maintains that it is "well-settled law" that "even defendants who design, manufacture or introduce in the market an allegedly defective product . . . are not subject to a court's jurisdiction simply by virtue of their product reaching the forum state."  Doc. 28 at 13, Doc. 32 at 14-15.  Along with *Nicastro*, HERB UK cites *Asahi*, 480 U.S. 102, discussed below, in support of its position.  Yet, HERB UK only refers to the plurality opinions, which, as discussed above, cannot be said to have created "settled law."

S. Ct. at 2792 (Breyer, J., concurring in the judgment) ("[T]he Court, in separate opinions, has strongly suggested that a single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant, even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place.") (internal citation omitted).

In *Kernan*, after the Second Circuit determined that New York's long arm statute extended to the Japanese manufacturer, it went on to determine that "the exclusive sales rights" agreement also served as evidence of its "attempt to serve the New York market, albeit indirectly." *Kernan*, 175 F.3d at 243. The Court notes, however, that *Kernan* was decided before the Supreme Court issued its opinion in *Nicastro* and that the Second Circuit has not indicated what, if any, effect *Nicastro* has on *Kernan*. Yet, the *Kernan* court did indicate that its holding applied even under the view expressed in the *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 117 (1987) plurality opinion, which was later echoed in *Nicastro*. The *Asahi* plurality held that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State."[17] *Id*. at 112 (O'Connor, J., plurality opinion). The *Kernan* court explained that its holding applied regardless of whether or not it adopted this stricter view:

> We need not adopt either view of the "stream of commerce" standard, however; even assuming arguendo that we were to adopt the *Asahi* plurality's more restrictive view, *we would still conclude for the reasons already stated that the "exclusive sales rights"*

---

[17] In contrast, Justice William J. Brennan, writing for four of the Justices in his partial concurrence, took a different view; opining that "[a]s long as a participant in this process [the stream of commerce] is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Asahi*, 480 U.S. at 117 (Brennan, J., concurring in part and concurring in the judgment). Under this view, there is "no need" for the existence of "additional conduct" directed at the forum state beyond the defendant's awareness that its product may end up there. *Id*.

> *agreement constitutes the type of purposeful action sufficient to support a finding of minimum contacts*.

*Kernan*, 175 F.3d at 244 (emphasis added).

In a similar case that arose after *Nicastro*, the Fifth Circuit recently held that personal jurisdiction in Mississippi was appropriate over an Irish forklift manufacturer that had an exclusive United States sales and distribution agreement with a Delaware corporation that kept its principal place of business in Ohio. *See Ainsworth v. Moffett Eng'g, Ltd*., 716 F.3d 174, 179 (5th Cir.) *cert. denied*, 134 S. Ct. 644, 187 L. Ed. 2d 420 (2013). The Fifth Circuit reiterated Justice Breyer's view that "'resolving [the] case require[d] no more than adhering to [the Supreme Court's] precedents' and that his decision was 'based on the facts," which involved only a single sale in [the forum state].'" *Id*. at 178 (quoting *Nicastro*, 131 S. Ct. at 2791-92) (Breyer, J., concurring)). In reaching its decision, the Fifth Circuit noted that the manufacturer in its case sold 13,073 forklifts to its exclusive United States distributor, 203 of which ended up in the forum state between 2000 and 2010. *Id*. Moreover, those sales accounted for 1.55 percent of the manufacturer's United States sales during that period.[18] *Id*.

The Court does not expect Third-Party Plaintiffs to offer this level of detail in their allegations without conducting discovery. Given that Third-Party Plaintiffs could plausibly allege sufficient facts to establish personal jurisdiction, jurisdictional discovery is warranted. At the close of this discovery, HERB UK may reassert its challenges to the Court's jurisdiction.

---

[18] The Fifth Circuit also noted that the Irish manufacturer designed a forklift for poultry-related uses, which was relevant given that the forum state—Mississippi—is the fourth largest poultry-producing state in the country. *Ainsworth*, 716 F.3d at 179.

19

## IV. Conclusion

In sum, Third-Party Plaintiffs have not established that the Court has personal jurisdiction over Third-Party Defendants. However, their request for limited discovery as to the issue of personal jurisdiction is granted. For the reasons set forth above, Third-Party Defendant's motion to dismiss is DENIED, without prejudice to refiling upon the completion of limited jurisdictional discovery. The parties shall meet and confer regarding the appropriate scope of discovery, and are directed to submit a proposed scheduling order to the Court by Monday, July 13, 2015. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 27.

It is SO ORDERED.

Dated:   July 6, 2015
         New York, New York

_____
Edgardo Ramos, U.S.D.J.